UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALVIN MOORE,

       Petitioner,

      v.                                                             Case No. 04-C-1235

LARRY JENKINS, Warden,

       Respondent.

## DECISION AND ORDER ON HABEAS CORPUS PETITION

### I. PROCEDURAL BACKGROUND

The petitioner, Alvin Moore ("Moore"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 following his conviction and sentence in the Milwaukee County Circuit Court for physical abuse of a child and battery. He was sentenced to serve nine months in prison on the battery count and three years in prison and three years of extended supervision on the physical abuse of a child count.

Moore appealed his conviction to the Wisconsin Court of Appeals. In a decision dated May 27, 2004, his conviction was affirmed by that court. On August 2, 2004, the Wisconsin Supreme Court denied Moore's petition for review. On December 27, 2004, Moore filed this federal habeas corpus petition. On May 31, 2005, this court ordered that further action on Moore's federal habeas corpus petition be stayed until Moore completed his efforts to seek relief in the state courts stemming from his conviction. Thereafter, on July 10, 2006, the court re-opened this action and on September

7, 2006, the court granted Moore's motion to amend his petition. The claims set forth in Moore's petition are now fully briefed and are ready for resolution.

Moore's amended habeas corpus petition raises three claims: (1) that his incriminating statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966); (2) that these incriminating statements were coerced and involuntarily given; and (3) that his trial counsel was ineffective for failing to vigorously challenge the admission of his incriminating statements.

## II. FACTUAL BACKGROUND

The following is a summary of the facts underlying Moore's conviction as set forth in the no merit brief filed by Moore's counsel, which was adopted by the Wisconsin Court of Appeals.

> Officer Darcie Trunkel testified that she and her partner, Officer Moeller, responded to a domestic violence call at about 1:08 a.m. on January 6, 2002. A 911 call had come into the department at 12:57 a.m. from a woman reporting a man with a gun. When they arrived at the location Mr. Moore came to the door holding a wooden stick that was about a foot and a half long with a metal hook on the end in his left hand at about shoulder level. He was volatile, very angry and was initially non-compliant with orders to drop the stick. Mr. Moore was subsequently handcuffed and removed from the scene by Officer Moeller, while Officer Trunkel stayed to interview the victims.

> Upon concluding the interviews Officer Trunkel returned to the squad where Mr. Moore had been secured by Officer Moeller in the back seat. She testified that while she and Officer Moeller were conveying him to the district station, Mr. Moore said, referring to Theresa and Tamika Posey (the alleged victims), that he beat them before and would beat them again. He also threatened to kill them several times. Officer Trunkel said they began transporting Mr. Moore at 2:04 a.m. and that neither she nor her partner said anything to elicit the responses from Mr. Moore.

> Officer Joel Moeller also testified to the events of January 6, 2002. He acknowledged arresting Mr. Moore and taking him down to the squad car and placing him in the back seat. He did not read Mr. Moore his rights. Officer Moeller said he asked Mr. Moore his name and for other general information. The only specific question asked of Mr. Moore with regard to that evening was "what's going on?" Mr. Moore did not respond directly. Instead he continued yelling that he didn't do anything. The specific question was asked immediately upon placing Mr. Moore in

2

> the squad. No other questions were asked of Mr. Moore. Officer Moeller estimated that it was about an hour later… that they began transporting Mr. Moore. More than once during the trip Mr. Moore stated he was going to kill Theresa and Tamika Posey. He said he beat them before and he would beat them again and that if he got out of jail he was going to go back and beat them like he did the night before.

(Ans., Ex. D at 3-4 (No Merit Brief of Defendant dated November 25, 2003) [hereinafter "No Merit Brief"].)

### III. STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus for a person in custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Furthermore, federal courts may not grant habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

A state court decision is "contrary to" federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision results in an "unreasonable application" of clearly established Federal law when the state court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle

from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407; *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). Moreover, "[a] rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 447, 480 (7th Cir. 2000).

Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. §2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

**IV. DISCUSSION**

As previously stated, Moore's habeas corpus petition raises three claims: (1) that Moore's incriminating statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966); (2) that these incriminating statements were coerced and involuntarily given; and (3) that Moore's trial counsel was ineffective for failing to vigorously challenge the admission of his incriminating statements. The court will address each argument in turn.

*A. Miranda Violation*

Moore argues that his incriminating statements were obtained in violation of his right against self-incrimination secured by the Fifth Amendment. (Pet'r's Br. at 1.) Specifically, Moore alleges that the incriminating statements used against him at trial were made in response to an officer's custodial interrogation, and that he was not read his *Miranda* rights prior to such interrogation. (Pet'r's Br. at 25.) The respondent asserts that Moore's statements were not made in response to a custodial interrogation. (Resp't's Br. at 5.) Therefore, the respondent argues that the statements were not obtained in violation of *Miranda*. (Resp't's Br. at 12.)

4

In *Miranda*, the Supreme Court held that, "[t]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. The Supreme Court holding in *Dickerson v. United States*, 530 U.S. 428, 438 (2000), reaffirmed *Miranda* as clearly established federal law. In *Rhode Island v. Innis*, 446 U.S. 291, (1980), the Court addressed the question of when interrogation occurs. Specifically, the Court held that interrogation consists of express questioning or its functional equivalent; that is, questions or statements that, "[t]he police should know are reasonably likely to elicit an incriminating response." *Id.* at 301.

The Wisconsin Court of Appeals identified the correct constitutional standard to apply when assessing whether Moore's statements were obtained in violation of *Miranda*. The Wisconsin Court of Appeals adopted the factual description and analysis of the case provided by Moore's counsel in the No Merit Brief and then independently concluded that further examination of Moore's claim was unnecessary. (Ans., Ex. B. at 2 (Wisconsin Court of Appeals Decision dated May 27, 2004) [hereinafter "May 27, 2004 decision"].) The analysis of Moore's *Miranda* claim, as set forth in the No Merit Brief, and thus, in the May 27, 2004 decision is as follows.

> When the State seeks to use statements of the defendant made during custodial questioning at trial, it must demonstrate by a preponderance of the evidence that, "the suspect was informed of his *Miranda* rights, understood them and knowingly and intelligently waived them," and that "the statement was voluntary." *State v. Hindsley*, 2000 WI App 130 21, 237 Wis. 2d 358, 371, 614 N.W.2d 48. On review, findings of fact by the trial court are upheld unless clearly erroneous while the question of whether the facts fit the applicable constitutional standard are reviewed de novo. *State v. Secrist*, 224 Wis. 2d 210, 207-208, 589 N.W.2d 387 (1999).

5

> Here all parties agreed Mr. Moore was subjected to custodial interrogation when, while he was in custody in the squad car, he was asked what happened that night. Because he was not provided with *Miranda* warnings prior to this question being asked, the state stipulated that any statements made in response to the inquiry were inadmissible. The question is whether the statements at issue, which were made an hour or more later, were in response to the officer's improper interrogation.
>
> In *Dickerson v. United States*, 530 U.S. 435 (2000), the United States Supreme Court reaffirmed the rule of *Miranda*, that any statements made by a defendant during custodial interrogation are inadmissible unless prior to the statements, the suspect was advised of various rights. *Dickerson* also re-affirmed the fact that *Miranda* only applies when a suspect is in custody and is subject to police interrogation. *Dickerson v. United States*, 530 U.S. at 435. The undisputed testimony in this case was that the statements Mr. Moore made with regard to beating the victims were not made in response to any questions of the officers. Hence, *Miranda* did not apply and there was no basis to exclude Mr. Moore's volunteered statements from trial based upon an alleged *Miranda* violation.
>
> It might be argued that because Officer Moeller improperly asked a question of Mr. Moore without first advising Mr. Moore of his rights under *Miranda*, that the subsequent inculpatory statements, made over an hour later, were a fruit of the prior illegality and should be suppressed. However, this argument is rendered meritless by the decision in *Oregon v. Elstad*, 470 U.S. 298 (1985). There, the United States Supreme Court held the Fifth Amendment does not require the suppression of a confession voluntarily made after *Miranda* warnings and valid waivers, solely because the police had earlier obtained an unwarned and uncoerced statement from the suspect. Granted, here Mr. Moore was not given the *Miranda* warnings prior to blurting out the inculpatory statements about beating the victims. However, as explained above, he did not give a statement in response to the earlier unwarned question and because his later statements were not in response to police questioning, no warnings were necessary. Certainly if suppression was not mandated in *Oregon v. Elstad*, *supra*, it was not required here.

(Ans., Ex. D. at 9-11.)

Given that the court of appeals correctly identified the Supreme Court precedent for analyzing Moore's claim, the next question is whether the court of appeals unreasonably applied that precedent. In order for habeas relief to be provided under the "unreasonable application" prong, the court of

6

appeals' decision must be "more than incorrect or erroneous," it must be "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

The Wisconsin Court of Appeals' determination that Moore's statements were admissible was not an unreasonable application of *Miranda*. In *United States v. Abdulla*, the court determined that an incriminating statement made repeatedly after a brief custodial interrogation, but not in response to such interrogation, was admissible despite the absence of a prior *Miranda* warning. 294 F.3d 830, 836-37 (7th Cir. 2002). The *Abdulla* court relied on *Oregon v. Elstad*, in finding that a technical violation of *Miranda* did not the preclude admission of voluntary statements which did not stem from the custodial interrogation. *Id.* at 837. The *Abdulla* court found that, despite the initial *Miranda* violation, because the unsolicited incriminating statements were not made in response to the officer's question, no *Miranda* warning was required and these statements were admissible. *Id.* at 836. The *Abdulla* court noted that even if the defendant's initial statement had technically been obtained in violation of *Miranda*, the fruit of the poisonous tree did not extend to exclude the later statements offered voluntarily and not in response to custodial interrogation. *Id.* at 835.

Moore argues that the failure to provide him with a *Miranda* warning creates an irrebutable presumption that his statements were compelled and thus inadmissible in the state's case-in-chief. (Pet'r's Reply Br. at 17.) Indeed, the state conceded, and the trial court found, that Moore was in custody and that Officer Moeller did not provide *Miranda* warnings prior to asking Moore, "what's going on?" Thus, had Moore responded to Officer Moeller's custodial question with an incriminating statement, and had the prosecution wished to use such statement in its case-in-chief, the trial court would no doubt have found the statement inadmissible under *Miranda.* (Ans., Ex. F. Doc. 60 at 77:8.) Here, however, Moore's repeated incriminating statements were made up to one

7

hour after Officer Moeller's question regarding, "what's going on." Furthermore Moore's incriminating statements were made voluntarily, without solicitation, and absent any coercive circumstances. As a result, the court of appeals' determination that Moore's statements did not stem from a custodial interrogation was not an "unreasonable application" of *Miranda*.

Moore asserts that the record demonstrates that he made an incriminating statement within a short time after Officer Moeller asking the question, "what's going on?" and such being the case, this statement was in response to a custodial interrogation. (Pet'r's Br. at 22.) Moore further contends that the trial court erred by only considering his subsequent statements made during his transport to the police station, and up to one hour after the custodial interrogation began. (Pet'r's Br. at 22.) In order to succeed on this argument, Moore must establish, by "clear and convincing evidence," that the trial court's determination of the facts was unreasonable. *Williams*, 133 F.3d at 973. Moore argues that a comparison of a 911 CAD report with the officers' testimony establishes that Moore responded to Officer Moeller's question, "what's going on?," within ten minutes of Officer Moeller's posing such question. (Pet'r's Br. at 20.) Moore premises his argument on Officer Moeller's testimony that he asked Moore "what's going on?" before radioing in to dispatch for the first time, and that Moore made an incriminating statement that he wanted to *beat* the victims before the next time Officer Moeller radioed in to dispatch, which was seventeen minutes later. (Pet'r's Br. at 6.)

First, I note that the record does not reveal exactly how much time passed between Officer Moeller's asking the question, "what's going on?", and Officer Moeller's first call to dispatch. (Ans., Ex. F. Doc. 60 at 46:13-25.) What the record does reveal is that Officer Moeller asked Moore, "what is going on?" prior to his first call to dispatch, and that Moore made the statement that he wanted to

8

*beat* the victims at some point before Officer Moeller's second call to dispatch, approximately seventeen minutes after the first dispatch. (Ans., Ex. F. Doc. 60 at 53:12-13.) However, Moore seems to be confusing his statement that he wanted to *beat* the victims, which very well may have been made within twenty minutes of Officer Moeller's question, with his statement that he wanted to *kill* the victims, which was made approximately one hour after Moeller's question during the transport of Moore from the scene. (Ans., Ex. F. Doc. 60 at 47:9-17.) The record clearly shows that Moore made numerous incriminating statements during his transport to the police station regarding his desire to both beat and kill the victims. (Ans., Ex. F. Doc. 60 at 48:17-22.)

At the *Miranda-Goodchild* hearing, the trial court found that the statements made by Moore during *transport* were separated by time and events from Officer Moeller's custodial interrogation and were therefore admissible under *Miranda*. (Ans., Ex. F. Doc. 60 at 79: 1-10.) Notably, the trial court did not make a finding of fact regarding exactly when Moore's initial statement about beating the victims was made solely to Officer Moeller while both were in the squad car. Nor did the trial court address the admissibility of such statement. However, at trial, the state introduced into its case-in-chief the following statement.

> Moore repeatedly stated to officers that he would beat (the victims) both again when he got out. He also stated that he would choke PO Trunkel if we took him out of handcuffs. PO Trunkel and PO Moeller conveyed the subject to CJF because he became argumentative and threatened PO Trunkel. During the conveyance and while waiting at CJF for booking, Moore continued to shout, 'I'm going to beat them to death. I beat them before and I'll beat them again. I'll kill them bitches. I'll kill both them bitches. Next time I beat her head off. You'll see.'

(Ans., Ex. F. Doc. 67 at 104: 23-25; 105: 1-7.) The initial portion of this statement arguably references Moore's initial incriminating statement, that is, his statement that he wanted to beat the victims, which was made solely to Officer Moeller prior to his being transported from the scene.

9

And, to reiterate, the trial court did not make any factual findings as to exactly when this initial incriminating statement was made or as to the admissibility of such statement.

Yet, even assuming that this incriminating statement was admitted in violation of *Miranda*, the next question is whether the admission of this statement during the state's case-in-chief had any effect on the fairness of Moore's trial. The petitioner contends that the admission of the incriminating statement was "substantial and injurious." (Pet'r's Reply at 25.) The respondent argues that the admission of Moore's incriminating statement was essentially harmless in light of the other evidence presented. (Resp't's Br. at 19.) On habeas corpus review, an error is harmless unless it, "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Easley v. Frey*, 433 F.3d 969, 974 (7th Cir. 2006) (internal citations omitted). Although the parties' harmless error discussion was made with respect to Moore's ineffective assistance of counsel claim, the same analysis is applicable to Moore's *Miranda* claim. *Cf. Flowers v. Blackburn*, 779 F.2d 1115, 1123 n.9 (5th Cir. 1986) (where the court broadly read petitioner's brief as raising harmless error argument); *see also Harrison v. Owen*, 682 F.2d 138, 142 (7th Cir. 1982) (stating that, where it was clear that any error was harmless, it was unnecessary for the district court to allow the petitioner to specifically brief the harmless error issue). In the end, even if the admission of the first part of the incriminating statement was admitted in violation of *Miranda*, this statement was essentially the same as the subsequent statement that the trial court ruled was admissible. As a result, I find that any error arising from the admission of such earlier statement was harmless.

In conclusion, I cannot say that the Wisconsin Court of Appeals's decision, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).

Additionally, the trial court's determination of events was reasonable in light of the evidence presented. 28 U.S.C. §2254(d)(2). Consequently, and for all of the foregoing reasons, Moore's claim that he is entitled to habeas relief because his incriminating statements were obtained in violation of *Miranda* must fail.

*B. Voluntariness of Incriminating Statements*

Moore also asserts that his incriminatory statements were made involuntarily and were the result of coercion. (Pet'r's Br. at 27.) Moore argues that, based on his intoxication, alcohol withdrawal, and the coercive pressures associated with restraint in the squad car, he was susceptible to making incriminating statements. (Pet'r's Br. at 28.) Moore states that this situation was aggravated by the arresting officer's initial questioning and "antagonizing actions." (Pet'r's Br. at 28.) As a result, Moore contends that his incriminating statements were not the product of a free and rational will. (Pet'r's Br. at 28.) The respondent contends that no coercion was used by the arresting officers against Moore. (Resp't's Br. at 13.) The respondent further argues that Moore simply experienced the routine circumstances of an arrest, and absent coercive circumstances, Moore's condition did not render his statements involuntary. (Resp't's Br. at 14.)

The Fourteenth Amendment right to due process precludes admission of involuntary confessions. *Winthrow v. Williams*, 507 U.S. 680, 688 (1993). In determining whether a confession is involuntary, courts examine the totality of the circumstances. *Id.* at 693. This examination includes the length and continuity of the interrogation, the location where the confession was obtained, and the education, maturity level, and mental health of the confessor. *Id.* A predicate to finding a statement involuntary, however, is the existence of coercive police activity in obtaining that confession. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

11

Moore presented to the Wisconsin Court of Appeals his claim that his incriminating statements were obtained involuntarily and were the result of coercion. The court of appeals' analysis of Moore's claim is as follows.

> In determining if a defendant's statement to police was voluntary a court looks first to whether improper pressures were exercised by the police. *State v. Williams*, 220 Wis. 2d 458, 464, 583 N.W.2d 845 (Ct. App. 1998). If law enforcement methods were not coercive, the inquiry ends. *Id.* It is only if the police practices were coercive that the court must balance the defendant's personal characteristics against the police tactics that may have induced the statement. *State v. Yang*, 2000 WI App 63, 233 Wis. 2d 545, 559, 608 N.W.2d 703.
>
> Here Officer Moeller testified that after obtaining generic information from Mr. Moore the only question asked of him was what happened that night. This occurred immediately after Mr. Moore was taken to the squad car and Mr. Moore did not respond directly. It was over an hour later that Mr. Moore blurted out the statements about beating the victims. The statements were not made in response to questions and Officer Moeller's uncontroverted testimony was that no threats or promises were made to Mr. Moore to induce the statements. Under the circumstances, the trial court properly found there was no evidence of any coercive activity by police and concluded Mr. Moore's statements were voluntary.

(Ans., Ex. D. at 11-12.)

Although the Wisconsin Court of Appeals did not directly rely on *Winthrow*, the court did apply the *Winthrow* analysis in its examination of Moore's claims. In *Winthrow*, the Court balanced the tactics of the police against the condition of the defendant when the statements in question were made to determine whether the incriminating statements were obtained involuntarily. Likewise, the court of appeals focused on the length of the interrogation, the break in continuity, and on possible police coerciveness when determining whether Moore's statements were made voluntarily. Thus, the Wisconsin Court of Appeals relied on the correct constitutional standard in assessing Moore's claim. Accordingly, the next question is whether the court of appeals unreasonably applied the *Winthrow* standard in examining Moore's claims.

12

The court of appeals' decision that Moore's statements were voluntary did not involve an "unreasonable application" of *Winthrow*. In determining whether Moore's statements were involuntary, the court of appeals focused on the fact that the officer's questions were limited and short, that Moore's statements were made after a significant separation of time and events, and that the police actions were routine and appropriate. (Ans., Ex. D. at 11). Moore argues that this analysis fails to account for his inebriated state at the time. (Pet'r's Br. at 28.) However, a statement made by an intoxicated person in custody is not rendered involuntary simply by the person's inebriated state. *United States v. Toro*, 359 F.3d 879, 885 (7th Cir. 2004) (stating that "intoxication alone does not show involuntariness"). Additionally, Moore's allegations that the arresting officers antagonized or baited him are not supported by the record. (Pet'r's Br. at 28.) The only antagonizing interactions between Moore and the arresting officers as stated in the record were Moore's unsolicited derogatory and offensive comments directed at a female officer. (Ans., Ex. F. Doc. 60 at 79:16.)

In the end, the Wisconsin Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. As a result, to the extent that Moore's habeas petition is predicated on the claim that his incriminating statements were involuntary and were given as the result of coercion, it must fail.

*C. Ineffective Assistance of Counsel*

Moore asserts that his trial counsel was ineffective because counsel did not file an interlocutory appeal and did not object at trial to the admission of Moore's incriminating statements. (Pet'r's Reply Br. at 23.) The respondent contends that Moore's counsel performed in a reasonable and professionally competent manner. (Resp't's Br. at 18.) The respondent further argues that,

13

absent Moore's incriminating statements, the other evidence constituted overwhelming evidence of Moore's guilt and thus, Moore cannot establish prejudice. (Resp't's Br. at 19.) To support this conclusion, the respondent points to the testimony of the two victims, the police officers' testimony, and the excited utterances of the victims at the scene, all of which were admitted at trial. (Resp't's Br. at 19.)

In *Strickland v. Washington*, the Court held that "when a convicted defendant complains of the ineffectiveness of the counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. 668, 687-88 (1984). This showing requires that the defendant's counsel, "made [an] error so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally the Court required that "[t]he defendant must show that there is a reasonable probability that, but for the counsel's professional errors, the result of the proceeding would have been different." *Id.* at 694.

The Wisconsin Court of Appeals, in its review of Moore's ineffective assistance of counsel claim, identified the correct constitutional rule. Indeed, the court of appeals cited directly to *Strickland* in its analysis of Moore's claim. (Ans., Ex. B. at 3). Moore, however, carries a heavy burden in establishing that the court's decision was an "unreasonable application" of the *Strickland* standard. Specifically, for a decision to be unreasonable, it must be "more than just incorrect or erroneous, and therefore federal courts defer to a state court's application of Supreme Court precedent as long as it is 'minimally consistent with the facts and circumstances of the case.'" *Danks v. Davis*, 355 F.3d 1005, 1008 (7th Cir. 2004).

Simply put, I cannot say that the court of appeals was unreasonable in its application of *Strickland*. Moore's counsel made an attempt to challenge the admissibility of Moore's

14

incriminating statements. Moore's counsel raised in the *Miranda-Goodchild* hearing the same concerns that Moore has unsuccessfully raised in this habeas petition.

Furthermore, even assuming that Moore's appellate counsel's performance was deficient in not further pursuing on appeal the admissibility of Moore's incriminating statements, I cannot say that there is a reasonable probability that Moore's trial would have resulted in a different outcome if such statements had not been admitted into evidence. Mirroring the harmless error analysis above, even assuming that Moore's initial incriminating statement to Officer Moeller regarding his desire to beat the victims had been objected to, that statement was cumulative of later incriminating statements which were properly admitted by the trial court. Moreover, even absent the admission of *any* of Moore's incriminating statements, the evidence against him was substantial. At trial, the two police officers' testimony, the victims' testimony, and a "911" audiotape of Moore's wife calling for help while being beaten by Moore, were all admitted as evidence of Moore's commission of the crimes charged. (Resp't's Br. at 19.) The bottom line is that the court of appeals' decision was not an "unreasonable application" of *Strickland*. In sum, Moore is not entitled to habeas relief on his ineffective assistance of counsel claim.

In conclusion, and for all of the foregoing reasons, Moore has not demonstrated that he is entitled to habeas corpus relief on any of his claims. Such being the case, Moore's petition for a writ of habeas corpus will be denied and this action will be dismissed.

**NOW THEREFORE IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this 26th day of March 2007, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

16